KATHERINE KIMMERLE, Also Known as KATHARINE KUMERLE LINDAUER, Respondent, v. NEW YORK EVENING JOURNAL, INC., Appellant.

First Department, November 18, 1932.

*Charles Henry* of counsel [*Charles C. Smith*, attorney], for the appellant.

*Edward S. Blackstone*, for the respondent.

MERRELL, J. The action was brought to recover damages against defendant upon two causes of action. The first cause of

action is for libel, plaintiff alleging that defendant, a domestic corporation was engaged in the business of publishing a daily paper, except Sundays, having a large circulation in the city of New York, and called the New York *Evening Journal*. Plaintiff alleges in the first cause of action that on September 2, 1931, defendant, in its newspaper, republished of and concerning the plaintiff the following words:

### " WEDS SISTER-IN-LAW

" She accepted him and on January 16, 1905, they were married. Five days later Hoch was courting Mrs. Catherine Kimmerly in New York, in a rooming house she conducted, in 47th Street at Tenth Avenue.

" Mrs. Fisher complained to Chicago police about the disappearance of her husband. This report called attention to his previous marriage and his wife's death. Police exhumed the body. Poison was found. The dirty, blood-smeared record he'd left behind came quickly to light.

" The alarm went out for Hoch as a murderer.

" Detective James J. O'Neill, a rookie of the W. 47th St. police station, turned Hoch in. It was chance that led him to the rooming house. He noticed two new trunks being taken in. He inquired about their ownership. He learned they belonged to a man after the description of Hoch. He won Mrs. Kimmerle's confidence. He went to the house one night when Hoch was downstairs. He stumbled, purposely entering the parlor. He fell against the wily German, stripped him of the pistol he had in a dressing gown pocket.

" The arch-fiend was trapped.

" Hoch was strung from the gallows in Chicago, February 23, 1906."

Plaintiff alleges that the words so published were wholly false and untrue, and known to defendant to be false and untrue, and that said words were published by defendant with actual malice toward plaintiff. Plaintiff further alleges that said words were published of and concerning plaintiff with the intent and for the purpose of injuring plaintiff in her reputation, and holding her up to ridicule, and in her feelings, and that thereby she suffered damages in the sum of $50,000.

In the second cause of action contained in the complaint plaintiff realleges the allegations contained in the first cause of action, except as to the amount of damages suffered, and alleges that the defendant contrived and maliciously intended to injure plaintiff " in her good name, fame, reputation and credit, and to bring her

into public shame, infamy in and among her friends, and to cause her to be shunned and to be suspected by these friends in the presence and hearing of divers persons, falsely and maliciously spoken of and concerning the plaintiff the following false and defamatory words: ' There goes Hoch's sweetheart.' '' Plaintiff alleges that as the result of such slander she was compelled to move from the neighborhood in which she resided; that said words were entirely false, and that thereby she suffered damages in the sum of $1,000.

The defendant moved upon the complaint for an order dismissing said complaint for insufficiency. By the order appealed from the court dismissed the second cause of action alleged in the complaint, but held that the first cause of action stated facts sufficient to constitute a cause of action for libel. I think the court was quite correct in holding that the words published of and concerning plaintiff were libelous *per se*, as they tended to bring plaintiff into disrepute and to ridicule and disgrace her among her friends and acquaintances. (*Zbyszko* v. *New York American, Inc.*, 228 App. Div. 277, at bottom of p. 278 and top of p. 279; *Stokes* v. *Stokes*, 76 Hun, 314, 317; *Triggs* v. *Sun Printing & Publishing Assn.*, 179 N. Y. 144.) The publication in question was the aftermath of publications appearing in the defendant's newspaper in 1905 and 1906. On September 2, 1931, the defendant republished the occurrences and happenings of twenty-six years before. I think there is no doubt that the article which charged that Hoch, the criminal who was hanged on February 23, 1906, courted plaintiff in New York five days after his marriage on January 16, 1905, was libelous *per se*. The publication in question clearly brands Hoch as a murderer and states that he was arrested in the apartment of plaintiff by a detective who had won plaintiff's confidence. In short, the article of which plaintiff complains states that plaintiff was courted by a man who was married to another five days before; that her suitor, called an " arch-fiend," was trapped in plaintiff's apartment, and a year later was strung from the gallows in Chicago. The notoriety which came to plaintiff as the result of said publication was widespread and the humiliation and shame she suffered as the result of such notoriety must have been extreme. I think the purport of the whole article was such as to disgrace plaintiff and to cause her shame among those who knew her.

There was no appeal from so much of the order of the Special Term as dismissed the complaint as to the cause of action for slander, the defendant appealing from so much of the order as denied its motion to set aside the complaint as to the cause of action for libel.

The order so far as appealed from should be affirmed, with twenty dollars costs and disbursements to respondent.

FINCH, P. J., and TOWNLEY, J., concur; O'MALLEY and SHERMAN, JJ., dissent and vote to reverse and grant the motion.

SHERMAN, J. (dissenting). The article in defendant's newspaper appears to have been a narrative concerned with the career of a criminal by name Hoch, a bigamist and murderer, who more than twenty-five years ago was hanged after conviction for murder.

Plaintiff is not charged with complicity in his crimes, nor does the publication ascribe to her any knowledge of Hoch's crimes or criminal propensities. The article, therefore, must be understood as charging her with innocently permitting Hoch to court her in the rooming house which plaintiff then conducted in this city.

Is it libelous *per se* to say of a woman that she was courted by a man of evil character, unless there be added to the statement something to indicate that she tolerated his attentions with knowledge of his bad character or criminal activities? I think not. No innuendo is pleaded. The implication of such knowledge may not be read into the article, when the writer has left it out.

The order appealed from should be reversed and the motion granted.

O'MALLEY, J., concurs.

Order so far as appealed from affirmed, with twenty dollars costs and disbursements. Settle order on notice.